JAMES STANLEY
*vs.*
ROBERT L. TINSMAN

Cumberland.   Opinion, January 21, 1963.

*Udell Bramson,* for Plaintiff.

*Linnell, Perkins, Thompson, Hinckley & Thaxter,*
  by *Royden A. Keddy* and *Charles P. Barnes,*
                                    for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., sat at argument but retired before rendition of decision.

WEBBER, J. On June 12, 1959 the plaintiff purchased from the defendant for a single sum by conditional sale contract four pieces of equipment commonly used in highway and building construction. Defendant failed to deliver one item, a used L57 Sullivan jackhammer. This unit was in the physical possession of one Morley in Massachusetts with whom it had been lodged for repairs by a previous owner. Mr. Morley failed to respond to defendant's demand for possession after he was informed that a sale had been made to plaintiff. Upon trial of plaintiff's complaint seeking damages for non-delivery, the justice below instructed the jury that they should find for the plaintiff on the issue of liability and submitted to them only the assessment of damages. A verdict for the plaintiff was returned in the amount of $950. Defendant seasonably appealed from the judgment.

It was not error for the presiding justice to take from the jury the issue of liability. Defendant failed to prove any legal excuse or justification for non-delivery. The suggestion that Morley might be holding the equipment as security for the payment of indebtedness owed by plaintiff was not supported by any evidence.

A careful review of the evidence makes it apparent that the verdict is excessive and cannot stand. Plaintiff sought to recover not only the fair market value of the equipment but also damage for loss of use and rentals. "The general rule of damages for the non-delivery of goods excludes the elements of profits and losses. * * * There are cases where both parties understand that special circumstances exist which affect the subject matter of the contract and reasonably contemplate the damages which would result from the

breach of such a contract, and gains prevented and losses sustained thereby may be recovered." *Lumber Co.* v. *Bradstreet,* 97 Me. 165, 173. In the absence of such special circumstances the recovery of one situated as was this plaintiff would be limited to the fair market value of the equipment. The plaintiff was required to "improve all reasonable and proper opportunities to lessen the injury," *Lumber Co.* v. *Bradstreet, supra.* This would include the purchase of similar equipment in the open market. *Miller* v. *Mariner's Church,* 7 Me. 51, 56; Anno. 81 A. L. R. 282. As was stated in Restatement of the Law of Contracts, Vol. 1, Sec. 336, Page 536 in the Comment on Subsection (1):

> "a. After the plaintiff has reason to know that a breach has occurred, or that a breach is impending under circumstances such that it is not reasonable for him to expect the defendant to prevent harm, he is expected to take such steps to avoid harm as a prudent person would take. He cannot get damages for harm that could thus be avoided. Furthermore, gains that he could thus make, by reason of opportunities that he would not have had but for the breach, are deducted from the amount otherwise recoverable. In general, however, it is reasonable for the plaintiff to rely upon the defendant to perform as he has promised. Also, it may be reasonable for him to expect the defendant to take the steps necessary to prevent harm after a breach has occurred; especially is this true if the breach is accompanied by assurances of the defendant that proper performance will soon be rendered and further harm prevented."

So far as the evidence shows there was nothing whatever that was unique about this jackhammer. It may be fairly assumed that it could have been readily replaced in the used equipment market. Plaintiff made no efforts to seek replacement. There is evidence that the defendant gave repeated assurances to the plaintiff that he would secure possession and make delivery. There is also evidence, however, that

about two weeks after the sale the plaintiff discussed the jackhammer with Mr. Morley and was unable to procure from him any indication that he would relinquish possession of the equipment. A question therefore arises as to whether or not plaintiff could proceed thereafter in reliance upon the assurances of the defendant with respect to delivery and take no steps to minimize the loss.

In the instant case the defendant objected to so much of the charge given by the presiding justice as purported to submit to the jury any consideration of loss of use as an element of damage. We think the objection went too far. The presiding justice instructed the jury that they might determine whether or not the equipment was unique and not readily replaceable in the open market. Since there was no evidence whatever to support a finding that it was unique, this portion of the charge was erroneous. On the other hand, it was not error to instruct the jury that they might determine whether or not plaintiff could reasonably rely upon the assurances of the defendant that delivery would be made, although that portion of the charge could have been amplified to advantage. Since this case must be retried, we take this occasion to suggest the proper scope of the instructions as they may deal with the circumstances under which this plaintiff may or may not be entitled to special damages for loss of use or rentals.

The plaintiff estimated the fair market value of the equipment as "$400, $450." Admittedly he had not seen the equipment since about 15 months prior to the purchase from the defendant. Although he knew that it had been placed with Mr. Morley to be repaired, he did not know whether or not the repairs had been made, or what they consisted of. He had no knowledge as to whether the machine was usable at the time he bought it. His testimony was in no way supported or corroborated. Under these circumstances a verdict of $950, of which at least $500 is

necessarily attributable to loss of use, is clearly speculative and conjectural and therefore excessive. Conjecture and surmise will not substitute for evidence and a "scintilla of evidence" will not support a verdict. *Glazier* v. *Tetrault,* 148 Me. 127; *Cyr* v. *Giesen,* 150 Me. 248; *Michalka* v. *Great Northern Paper Co.,* 151 Me. 98.

*Appeal sustained.*

*New trial ordered.*